GRIFFIS, P.J.,
for the Court:
¶ 1. This appeal arises from a claim brought against Gerald E. Bailey by the estate of Jerry Ann Barksdale, deceased. The Court has determined that it is without jurisdiction to decide this appeal because there was neither a final judgment nor a Mississippi Rule of Civil Procedure 54(b) determination. Accordingly, the case is dismissed.
FACTS
if 2. A full recitation of facts is necessary to understand this Court’s action.
¶ 3. Jerry Ann Barksdale died on March 13, 2012. As of the date of her death, Barksdale was survived by her children: Gerald E.. Bailey, Cecil E, Bailey, Larry R. Bailey, Deborah Steele, Kenny Joe Pickering, Paulette Shaws, and Johnny Earl Pickering.[1] Her husband had died on February 24, 2012.
¶ 4. On April 24, 2012, Larry Bailey filed a petition for appointment of an administrator and for issuance of letters of administration. The petition asked that Steve Headrick be appointed the administrator. Larry’s petition stated that he was unaware of whether Barksdale died with a will but understood that her will may have been in the possession of Gerald. On May 8, 2012, the chancellor entered an order authorizing appointment of an administrator and issuance of letters of administration and appointed Headrick as administrator. On May 23, Headrick executed the oath of' administrator and filed the required bond. On May 24, letters of administration were issuéd to Headrick.
¶ 5. On July 10, 2012, Headrick filed a petition for a determination of the heirs-at-law. In the petition, he asked the chancery'court to determine Barksdale’s heirs to be her children: Gerald E. Bailey, Cecil E. Bailey, Larry R, Bailey, Deborah Steele, Kenny Joe Pickering, Paulette Shaws, and Johnny Earl Pickering. The chancery court’s docket indicates that Headrick published" notice of the petition by publication, but it does not indicate that any of the known heirs were served with process or entered an appearance by waiver of process.
¶ 6. On August 13, 2012, a document titled “Last Will and Testament of Jerry Ann Barksdale” was filed. There was no accompanying petition, motion, or any other document filed. There is no indication as to who filed this document.
¶ 7. On August 14, 2012, Headrick filed a petition for an order to return property to the estate and other relief against Gerald. In this petition, Headrick alleged that Gerald should be ordered to return certain assets to the estate. The petition stated that, at the end of her life, Barksdale had *206 given Gerald her power of attorney, and Gerald had improperly used and converted some of her assets. The petition specifically asked the chancery court to: (1) order Gerald render a full, completed, and documented accounting; (2) enter a declaratory judgment finding Gerald had a confidential relationship with Barksdale and exerted undue influence on her for his personal ■ gain; (3) order the return of property Gerald obtained through unjust enrichment; and (4) establish a constructive trust over Barksdale’s assets that Gerald had wrongfully obtained, along with interest and attorney’s fees. The petition did not include a demand for an award of a specific monetary amount.
¶ 8. According to the clerk’s docket, on August 14, 2012, the clerk issued both a Mississippi Rule of Civil Procedure 81 summons and a “30 day summons” to Gerald.
¶ 9. On August 20, 2012, the chancellor entered a judgment, for default of unknown heirs. The order indicates that process was served on “all possible known heirs, interested parties!,] and unknown heirs” by publication. It also provides that “any and all other interested parties and .unknown heirs have waived any rights by failing to appear.” The judgment determined the' heirs to be the children named above.
¶ 10. On August 22, 2012, the clerk’s docket indicated: “30-day and Rule 81 [sjummons returned showing personal service on Gerald Bailéy on the 14th day of August, 2012.” The returned summonses are not included' in the record before this Court. Although not in the record, it appears that the Rule 81 summons set the matter to be heard on September 13, 2012. Gerald denies that he was personally served with process.. Gerald did not file a response to the Rule 4 (the thirty-day) summons or the Rule 81 summons, and he did not appear before the chancellor on September 13,2012.
¶ 11. On September 14, 2012, nunc pro' tune September 13, 2012, the chancellor entered an order to show cause. The order ruled that the chancery court had jurisdiction over the parties, the venue was proper, Gerald was properly served with a Rule 81 summons returnable to the court on September 13, 2012, and he failed to appear. The chancery court also ordered that “a new court date shall be set by counsel for the Estate and that this Order shall be served on Gerald E. Bailey to show cause why he has not appeared to answer the allegations in the petition for order and to return property and other relief.” The chancery court further ordered the estate was entitled to an inventory and accounting of all assets in the bank accounts that Gerald had control of prior to his mother’s death. Gerald was given thirty days to submit the inventory and accounting.
¶ 12. On September 18, 2012, the estate filed an application to the clerk for entry of default and a motion for a default judgment. The clerk executed and filed the entry of default on the same day.
¶ 13. On September 21, 2012, the clerk’s docket indicated a “notice of hearing” and a “Rule 81 summons issued to sheriffiprocess server for service on Gerald E. Bailey and returnable on the 27th day of November, 2012.” The docket does not indicate what was set for a hearing. On September 26, 2012, there was a another docket entry identical to the entry quoted above.
¶ 14. On September 21, 2012, the chancellor executed a default judgment. The default judgment indicated that Gerald took advantage of a confidential relationship with Barksdale and exerted undue influence over her, and that all of the *207 transfers were against Barksdale’s best interest. The chancery court ordered a “constructive trust is in effect and that all said assets shall be returned to the estate, or if they have already been spent, shall operate as a set-off against any, portion of the Estate that Gerald may be entitled to.” The order also provided Gerald .“shall pay all of the attorney[’]s fees that were necessary to return said funds to the estate.” The default judgment did not include any monetary amount. Also, the record does not include any transcript of the hearing on the motion for á default judgment or the writ of inquiry.
¶ 15. On September 26 and 28, the clerk’s docket again indicated a “notice of hearing (11/27/2012)” without an indication of what was set for a hearing.
¶ 16. On October 1, 2012, the clerk’s docket indicated a “[fjiat authorizing process to issue for [sic] oh the 27th day of Nov'émber, 2012, returnable to Lamar County, Mississippi.”
¶ 17. On October 11, 2012, the clerk’s docket indicated “Rule 81 Summons Returned” and stated, “I hereby certify that I have executed the within writ by personally delivering to the within named Gerald E. Bailey a true copy of this writ. This the 27th day of November, 2012. By Brent Perreault.”
¶ 18. On September 21, 2012, the clerk’s docket indicated a “notice of hearing” and a “Rule 81 summons issued to sheriff/process server for service on Gerald E. Bailey and returnable on the 27th day of November, 2012.”
¶ 19. On November 5j 2012, through counsel, Gerald filed a petition to ápprove accounting. The petition also included an affidavit of a subscribing witness, Nancy Lamar, who stated that she witnessed Barksdale sign her Last Will and- Testament.
¶ 20. On January 11, 2013, Gerald filed a “Rule 60 Motion.” In this motion, he asked the chancery court to set aside the default judgment or, alternatively, a hearing to specify the relief granted under the default judgment. No hearing was set for this matter. ,
¶ 21. On February 15, 2013, Gerald filed a petition to approve accounting. ..
¶ 22. On February 20, 2013, the chancellor executed an “Order of- November 27th, 2012.” The order indicated that it was “nunc pro tunc, 27th day of November, 2012.” It also provided that Gerald was given additional time until January 15, 2013, to provide a full inventory and accounting, he was to provide the keys to Barksdale’s home to Headrick, aind Head-rick was authorized to clean the home and pay any bills associated with the home. The order also required Headrick to provide an inventory of the assets in the home by January 15, 2013.- Despite this order, neither the record nor -the clerk’s docket indicates that a hearing was held on November 27, 2012.
¶23. On February 26, 2013, Gerald filed an amended petition to approve the accounting. Thén on April 24, 2013, Gerald filed a "petition to admit the will and issue letters testamentary.
¶24. On August 19, 2013, Headrick filed a response to Gerald’s petition to admit the will and issue letters testamentary. Then, on November 14, 2013, Head-rick filed a supplemental inventory and a preliminary inventory, which was dated January 9, 2013.
¶ 25. On January 24, 2014, Headrick filed a motion to sell (Barksdale’s) home and car. On March 21, 2014, “nunc pro tunc, 25th day of • February, 2014,” the chancellor executed an “Agreed Order of February 25, 2014” that allowed the estate to list the home and sell the automobile. *208 The order also read: “[T]his matter is set for trial at 9:00 a.m. on Thursday June 5, 2014.”
¶ 26. On April 3, 2014, Headrick filed a motion for reimbursement and to pay routine bills. On the same day, an order was entered approving the motion. ■
¶27. A hearing was held on June 5, 2014, by an agreed order. Gerald testified and was questioned by the chancery court about his failure to appear previously. He testified that he had not received personal service but heard about the hearing from his brother. The chancellor indicated that Gerald did know about the hearing and refused to set aside the default judgment. Gerald also testified about his actions regarding Barksdale’s finances before and after she died.
¶ 28. On June 25, 2014, the chancellor signed a judgment. The judgment was not filed until August 26, 2014. According to the judgment, the chancellor ruled:
1. That the motion to set aside default judgment of September 21, 2012[,] is overruled.
2. The court finds that the estate is entitled to a judgment against Gerald E. Bailey in the amount of ... $158,846.00. This amount reflects all amounts taken by Gerald E. Bailey, minus those that the court has found were legitimate expenses for the use and interest of the decent [sic] Jerry Ann Barksdale.
3. Gerald E. Bailey has testified that he has somewhere in excess of Forty Thousand Dollars remaining of the money taken. The court recognizes a constructive trust over these assets and immediately orders that all of these assets will be turned over to Steve Headrick, the Executor of the estate. Any money that is returned shall act as a set off against the judgment ordered in paragraph 2.
4. Attorney[’]s fees shall also be issued against Gerald E. Bailey, and the total of which shall be decided by the court at the close of the estate and act as a further judgment against him at that time.
5. The court approves payment of ... $7,500.00 to [counsel for the estate]. Remaining Expenses shall be submitted at the close of the estate upon final adjudication.
6. That the will on file will continue to be probated with Gerald receiving 25% with the court holding the added black ink marking on the will of “50%” for nought.
¶ 29. On September 3, 2014, Headrick, as “executor,” filed a petition for approval of the first annual accounting and partial distribution.
¶30, On September 23, 2014, Gerald filed his notice of appeal “from the judgment entered in this case on August 26, 201[sic] and the denial of the relief contained in all of the appellant’s pleadings.”
¶ 31. On October 24, 2014, Gerald filed his answer to the petition for approval of the first annual accounting and partial distribution.
¶ 32. On November 24, 2014, Headrick filed a petition to sell real estate. At this point, the record before this Court ends.
ANALYSIS
¶ 33. Gerald’s appeal raises several issues. The primary issue is whether the chancellor was correct to enter a default judgment in an estate matter, among other issues.
¶ 34. However, we cannot get past our jurisdictional review of the chancellor’s judgment that Gerald has appealed from. The chancellor’s judgment, signed on June 25, 2014, and filed on August 26, 2014, *209 simply does not grant full relief. It is not a final, appealable judgment. In paragraph 4, the chancellor ruled:
Attorney[’]s fees shall also be issued against Gerald E. Bailey, and the total of which shall be decided by the court at the close of the estate and act as a further judgment against him at that time.
¶35. Although the parties have not raised the issue of appellate jurisdiction, we must address whether the chancellor’s order was a final, appealable judgment under Mississippi Rule of Civil Procedure 54(b). Clausell v. Bourque, 122 So.3d 825, 827 (¶ 6) (Miss.Ct.App.2013) (citing Williams v. Delta Reg’l Med. Ctr., 740 So.2d 284, 285 (¶ 5) (Miss.1999)).
¶ 36. Under Rule. 54(b), the chancellor may “direct the entry of a final judgment as to one or more but fewer than all of the claims or parties.” However, for the judgment to be final, the order must make an “expressed determination that there is no just reason for delay” and. an “expressed direction for the entry of the judgment.” Id. Without such express determinations, the order is interlocutory.
¶ 37. Here, the estate’s petition made a claim for attorney’s fees against. Gerald. After a trial, the chancellor expressly refrained, from ruling on the attorney’s fee claim until “the close of the estate;” Thus, the estate’s claim for attorney’s fees is still pending before the chancellor. The.judgment is not a final, appealable judgment. In In re Estate of Lewis, 135 So.3d 202, 206 (¶¶ 15-16) (Miss.Ct.App.2014), this Court dismissed an appeal under Rule 54(b) because the chancellor did ..not resolve “the issue of the attorneys’ fees incurred.” We held it was not final and appealable and dismissed the appeal for lack of jurisdiction. Id.
¶ 38. Here, regrettably, we must do the same. This appeal is dismissed for lack of jurisdiction.
¶ 39. THIS APPEAL IS DISMISSED FOR LACK OF JURISDICTION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.